73 F.3d 362
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 In re ST. CLAIR CLINIC, INC., Debtor.
Mary Ann RABIN, Plaintiff-Appellee,
v.
Robert DELACRUZ; Caridad Delacruz, Defendants-Appellants.
 No. 94-3943.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1996.
 
 Before: LIVELY, KENNEDY, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Mary Ann Rabin, operating trustee for the debtor, St. Clair Clinic, Inc., brought an action to recover real property from defendants Robert and Caridad DeLaCruz, alleging that the DeLaCruzes acquired the property with funds fraudulently conveyed from the clinic. Defendants appeal from summary judgment entered in favor of the plaintiff before the defendants filed any response to the motion or presented any evidence in opposition to the motion. We find no error and affirm.
 
 I.
 
 2
 Robert DeLaCruz was the president and Caridad DeLaCruz was the office manager of the St. Clair Clinic, Inc., which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 23, 1992. Mary Ann Rabin was appointed operating trustee. The trustee sought to recover, for the benefit of the bankruptcy estate, certain real property that the DeLaCruzes bought in 1991. The trustee alleged that the acquisition of this property was funded with $15,000 fraudulently conveyed from the clinic. She alleged that several indicia of fraud were present in this transfer, including that the transfer of the $15,000 was made without consideration, that the transfer was made to an insider, and that the clinic was insolvent at the time of the transfer.
 
 
 3
 The defendants bought the property for $126,000. They made a $1,000 deposit with a bank check, which was funded by a check from the St. Clair Clinic that was both payable to and signed by Robert DeLaCruz. The defendants issued a check for $15,000 to the seller at the closing. The $15,000 check was funded by a bank check for $6,000 and one for $9,000. Both of these checks funding the $15,000 payment were in turn funded by eight checks from September 12, 13, and 23, 1991, which were written and signed by Robert DeLaCruz upon the checking account of the clinic, payable to DeLaCruz. Robert DeLaCruz's total compensation in September 1991, was $30,414, of which $9,000 was designated "salary," $19,200 was designated "professional services," and $2,200 consisted of indirect payments. Robert DeLaCruz is not licensed to practice medicine, and stated in a deposition that the disbursements labelled "professional services" were labelled that way for tax purposes on the advice of an accountant.
 
 
 4
 On June 10, 1994, the trustee filed a motion for summary judgment with supporting affidavits and complete transcripts of the DeLaCruzes' deposition testimony, citing to selected portions of these materials. The defendants filed nothing at all in opposition to the trustee's motion within ten days of service of the motion, as required by local rules. On July 29, 1994, the district court granted the trustee's motion for summary judgment and imposed a constructive trust over the property.
 
 
 5
 On August 3, 1994, the defendants filed a Motion for Leave to File Affidavits in Opposition to Trustee's Motion for Summary Judgment Instanter and for Leave to Amend Answer to Assert Counterclaims and to Join Necessary Third Parties. The district court denied this motion as untimely, noting that no justification for the untimeliness had been asserted.
 
 
 6
 In granting the plaintiff's motion for summary judgment, the court concluded that the trustee "offered unrebutted proof demonstrating that the September 1991, conveyance of $15,000 from the Clinic to Robert DeLaCruz [was] a fraudulent conveyance as to an unsecured creditor of the Clinic." Rabin v. DeLaCruz, No. 1:94CV0457, slip op. at 10 (N.D.Ohio July 29, 1994). The court determined that the trustee established, and the defendants failed to controvert, a fraudulent transfer in violation of Ohio Rev.Code Sec. 1336.04(A)(1). The court found that the trustee had submitted evidence of several badges of fraud, raising an inference of fraudulent intent in the transfers: the transfers were made to an insider, namely, Robert DeLaCruz, president of the clinic; the clinic checks were falsely labelled for "professional services"; the clinic checks were converted to bank checks before paying the title company "to conceal the transfers and their ultimate use" (Rabin, slip op. at 10); the $15,000 "compensation" DeLaCruz received from the clinic in September 1991 was without consideration and was unusual and improper in the industry, as were many other transfers (id. at 11); and the clinic was insolvent at the time that the transfers, amounting to $15,000, were made to DeLaCruz. Id.
 
 
 7
 Alternatively, the court determined that the trustee established fraudulent transfer under Ohio Rev.Code Sec. 1336.04(a)(2) by demonstrating, without opposition, that the clinic was insolvent in September 1991, and did not receive a reasonably equivalent value in exchange for the $15,000 payments in September 1991. Id.
 
 II.
 
 8
 Where the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir.1989) (citation omitted). Rather, the trial court may rely upon the "facts presented and designated by the moving party." Guarino v. Brookfield Township Trustees, 980 F.2d 399, 404 (6th Cir.1992). The appellate court reviews the same record. Id. (citations omitted). If the role of the trial court were not limited to the facts advanced and highlighted by the unopposed moving party, the trial court, and in turn the appellate court, would be compelled to search all materials submitted with the summary judgment motion for genuine issues, to seek out facts, develop legal theories, and generally champion the position of the silent nonmoving party. Id. at 405-07.
 
 
 9
 Although our review is limited to the record advanced by the unopposed movant, we will critically examine the accuracy and context of this evidence advanced by the movant. See Guarino, 980 F.2d at 407. In addition to arguments endorsed by the moving party, we consider inferences that are apparent from the designated evidence and favorable to the nonmoving party. Id.
 
 III.
 
 10
 This court reviews a grant of summary judgment de novo, and uses the same test as used by the district court. Brooks v. American Broadcasting Companies, 932 F.2d 495, 500 (6th Cir.1991). Federal Rule of Civil Procedure 56(c) requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If the movant carries its burden of demonstrating that the nonmoving party has not established an essential element of that party's case, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the nonmoving party "may not rest upon the mere allegations or denials of [its] ... pleading, but ... must set forth specific facts showing that there is a genuine issue for trial," or summary judgment will be entered against it. Fed.R.Civ.P. 56(e).
 
 IV.
 
 11
 The trustee sought to avoid the transfer of the property as a fraudulent conveyance, alleging that the real estate was purchased with clinic funds and therefore belonged to the bankruptcy estate. The trustee can avoid "any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title...." 11 U.S.C. 544(b). The Ohio Uniform Fraudulent Transfer Act provides that a transfer made or an obligation incurred by a debtor is fraudulent to a creditor
 
 
 12
 if the debtor made the transfer or incurred the obligation in either of the following ways:
 
 
 13
 (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 
 
 14
 (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
 
 
 15
 (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
 
 
 16
 (b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
 
 
 17
 Ohio Rev.Code Sec. 1336.04(A). Under Ohio law, once the plaintiff shows that the challenged transfer lacked fair consideration pursuant to section 1336.04(A)(2), the burden of proof shifts to the debtor to prove his solvency on the date of the transfer and afterward. In re Ohio Corrugating Co., 70 B.R. 920, 926-27 (Bankr.N.D.Ohio 1987).
 
 A.
 
 18
 The evidence presented to the district court in support of the trustee's motion for summary judgment showed that: payments were labelled "professional services" although defendant could not and did not render any professional services; the clinic was defendant's sole source of income; defendants did not document their claim that the money used to buy the property came from their savings or from the sale of other properties; defendant's job duties remained constant although his compensation rose sharply in September 1991; the clinic was insolvent in September 1991; a variety of defendants' personal expenses were paid with clinic funds; and the defendants' compensation package was greatly in excess of industry norms.
 
 
 19
 In evaluating the claim under Ohio Rev.Code Sec. 1336.04(A)(1), the district court correctly noted that "the ultimate burden of proof in establishing a fraudulent transfer is on the party seeking to invalidate the transaction." Rabin, slip op. at 9. The court also stated that the presence of "badges of fraud" shifts the burden to the party seeking to uphold the transactions who must then rebut the inference of fraud. Id. The badges of fraud cited by the district court do not ordinarily permit summary judgment because, as noted in Hansen v. Hunter, 114 B.R. 927, 935 (Bankr.N.D.Ohio 1990), all the facts must be construed in the light most favorable to the party opposing the motion. However, here the facts are uncontroverted and, in Ohio, "proof of a sufficient number of badges of fraud can give rise to a rebuttable presumption," Hansen, 114 B.R. at 935 (citing Cardiovascular & Thoracic Surgery of Canton v. DiMazzio, 524 N.E.2d 915, (Ohio Ct.App.1987). The evidence of fraud in this case is "so overwhelming that no rebuttal is possible," Hansen, 114 B.R. at 935, and in any case, went unrebutted.
 
 
 20
 As the district court noted, the trustee also prevails under Ohio Rev.Code Sec. 1336.04(A)(2). The insolvency of the debtor at the time of the transfer is not disputed. The facts establishing that the debtor did not receive fair consideration for the $15,000 conveyed to Robert DeLaCruz and used to purchase the property at issue are uncontroverted. There is no genuine issue about the fact that no equivalent value was received by the clinic in exchange for the $15,000 in salary or for the compensation for "professional services" that was paid to the defendant in September 1991.
 
 B.
 
 21
 The justifications offered by the defendants for failing to file a timely motion in response to the plaintiff's motion for summary judgment do not explain why they failed to make a timely motion for an extension of time to respond to the motion for summary judgment; at most the justifications explain why an extension of time would have been helpful.
 
 
 22
 The district court was under no obligation to recast the defendants' motion as a request for reconsideration. The materials the defendants sought to file did not allege any legal error in the summary judgment decision, and they did not assert any newly discovered evidence or other compelling reason to extend to six weeks the time to respond to a motion for summary judgment from the ten days allowed under local rules.
 
 V.
 
 23
 For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the plaintiff.